Michelle R. Burrows 861606
MICHELLE R. BURROWS, PC
1333 NE Orenco Station Pkwy Ste 525
Hillsboro, OR 97124
503-241-1955
michelle.r.burrows@gmail.com

      Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| Andrew Corrado, Kelly Corrado, <br><br>       Plaintiffs <br><br> v. <br><br> City of Portland, a municipal subdivision of the State of Oregon, John Doe Officers 1 and 2, <br><br>       Defendants. | Case No. 3:19-cv-001095-SB <br><br> FIRST AMENDED COMPLAINT |

**INTRODUCTORY STATEMENT**

1.

     This suit is filed by Plaintiffs under 42 U.S.C. § 1983 for actions by the named defendants in events transpiring on July 25, 2017 during which Portland Police Bureau police officers were contacted by several individuals about a dangerous assaultive couple who were camping on a public beach. The Portland officers acknowledged the assaultive couple had previously threatened other citizens and they thereafter warned Plaintiff's stay away from the couple. The couple attacked Plaintiffs with a weapon seriously injuring both.

1 – FIRST AMENDED COMPLAINT

2.

This court has jurisdiction over Plaintiff's claim of violations of federal Constitutional

Rights under 28 U.S.C. §§ 1331 and 1343.

3.

Venue is proper under 28 U.S.C. § 1391(b), in that one or more of the defendants reside

in the District of Oregon and Plaintiffs' claims for relief arose in this district.

4.

Plaintiff is entitled to her attorney fees pursuant to 42 U.S.C. § 1988.

**PARTIES**

5.

Plaintiffs are a married couple who have continuously resided in Multnomah county. The

events described in this Complaint occurred in the City of Portland, Multnomah County Oregon.

6.

Defendants John Does are Portland Police officers who were on duty on July 25, 2017

and had been called to investigate reports of assaults, threats and disruptive behavior at Poet's

Beach Park on the Willamette River.

7.

The City of Portland is a municipal subdivision of the State of Oregon. The City

employed the John Doe Defendants and is responsible for the safety and protection of individuals

at Poet's Beach Park. Poet's Beach is a City of Portland Park and is listed as falling under the

supervision of the City of Portland Parks & Recreation Division.

**FACTUAL BACKGROUND**

8.

On July 25, 2017 Plaintiffs went to Poet's Beach Park with their dog. They were there to

explore the park and enjoy the newly-opened riverfront recreation area.

*Poets Beach*

2 – FIRST AMENDED COMPLAINT

9.

Poet's Beach is located under the Marquam Bridge along the South Waterfront Park on the west side of the Willamette River. It is described as a location where visitors may swim in the Willamette River during low water levels in the summer. Poet's Beach has a sandy shore with easy river access which is delineated with a swim line and floats. Poet's Beach was not lifeguarded in 2017 but is expected to be so in 2019. The beach is generally open for swimming from July 11 through August 25 during park hours from 5 a.m. to midnight daily.

10.

The Poet's Beach project was a collaborative effort between the Human Access Project, Honoring our Rivers, Willamette Partnership and Flowing solutions to provide a dedicated place for individuals to enjoy the Willamette River. The City sponsors regular events at Poet's Beach including Mayoral Swims, Float trips, community gatherings. It has been described as the City's first beach in downtown Portland.

*The Assault*

11.

On July 25, 2017 Plaintiffs arrived at Poet's Beach. They were walking on the public sandy beach and playing fetch with their dog. Nearby they observed individuals who appeared to have taken up residence on the beach with an elaborate tent, porch and other amenities. It appeared these individuals lived in the tent full time. These individuals had several animals including dogs, a rabbit and a parrot. Mr. Rance told Plaintiffs they had been publicly camping there for several weeks. It appeared a couple lived at the tent claiming they had been given permission to do so. The couple are identified as Jonathan Rance and his wife Alyssa Retes.

12.

As the Plaintiff's arrived at the Beach they were approached by two police officers. One officer advised them they had been called to the Beach based on reports from other citizens of an abusive, assaultive individual who was living at the beach. The officer told them they had

received more than one complaint about this individual and that he was considered dangerous enough the officers advised Plaintiff to stay away from him.

13.

The Plaintiffs were not told who the assaultive individuals were or where they were located. It did not appear the Portland Police arrested or removed the disruptive individuals.

14.

Some time after the warnings by the police, Plaintiffs were sitting on the beach with their dog. Their dog observed another dog running loose and moved to approach it. Plaintiffs stood up to intercept their dog when they were confronted by Mr. Rance. Mr. Rance began to throw rocks at Mr. Corrado forcing Plaintiff to retreat into the river to avoid being pelleted by the large stones abutting the riverbank being thrown by Mr. Rance. Mr. Rance had also withdrawn a metal baton from his pocket.

15.

When Mr. Corrado had retreated into the river, Mr. Rance turned his attention to Mrs. Corrado who had come to the aid of her husband. Mr. Rance shoved Mrs. Corrado down to the ground on some large boulders and began to beat her with the baton on the back of the head causing a deep bleeding gash. Mr. Rance continued to beat her even after she fell to the ground. Mrs. Corrado received serious injuries to her head, cuts bruises and was hospitalized for the severe beating inflicted by Mr. Rance. Mr. Rance allegedly was angry that the Corrados brought a dog to the beach.

16.

Mrs. Corrado attempted to call 9-1-1 with her phone but Mr. Rance grabbed the phone away from her. Mr. Rance then hit Mr. Corrado on the left shoulder with the baton causing a several slash, bruising and swelling.

*Past Assaults by Rance and Retes*

4 – FIRST AMENDED COMPLAINT

17.

At the time of the incident with the Corrados, Mr. Rance was on supervised release and ordered to wear an ankle monitor. Portland Police would have access to that information and contacts for Mr. Rance's parole officer. Rance had been convicted of third-degree robbery in January 2017 and third-degree theft in July. At the time of the assault on the Corrados, Mr. Rance owned a pit bull which was involved in prior attacks involving Mr. Rance and park users. Mr. Rance was arrested on the Corrado assault when police responded to a disturbance at Best Value Inn in Portland in August 2017.

18.

Mr. Rance and Ms. Retes had been living in a tent near Poet's Beach for an unknown time prior to the July 25 assault. There were numerous complaints about the illegal campsite, prior assaults by Rance and Retes, threatening behavior by Rance and Retes against residents of the area and a well-documented written and telephonic history of complaints to the City of Portland and the Portland Police Bureau and their conduct.

19.

On July 17, 2017, the Poet's Beach Host received a complaint against a woman/man with a pit bull using the pit bull to attack a woman at Poet's Beach. No arrests were made. The woman who assaulted the park visitor was described as "homeless" but also was described as living in a tent with a pit bull. The homeless woman attacked the visitor who reported the incident to the Poet's Beach Host who called the police. The police put the host on hold for over an hour and a half and no officer responded. This was the second incident of that day involving Rance and Retes.

20.

On July 17, 2017, a complaint was made to the Portland Police Bureau concerning a "fist fight" between the homeless woman living in a tent on Poet's Beach and another visitor. The

5 – FIRST AMENDED COMPLAINT

Portland Police were called and responded. No arrests were made. No attempt was made to remove the illegal campers. The fight occurred in front of the lifeguards at Poets Beach.

21.

On July 18, 2017, a call was made to Portland Police about two transients stealing from other patrons of Poet's Beach. The two "transients" were described as the same two involved in the other incidents described herein, one was wearing an ankle monitor and the two lived in a tent near Poet's Beach. The criminal acts alleged occurred on Portland park property. The police were called via the emergency line. No arrests were made. No exclusion orders were given to Mr. Rance or Ms. Retes for this incident.

22.

On July 23, 2017, a patron of the park reported to a Poet's Beach lifeguard that one of the "campers" had threatened him with a knife. No arrests were made. The criminal acts alleged may have occurred on Parks property.  No exclusion orders were issued to the perpetrators.

23.

Many of the Portland parks are monitored and patrolled by Park Rangers pursuant to City code. The Portland Park rangers make daily reports on issues and incidents of note. Nothing was reported for the July 17, 2017 incident. Rangers checked in with park staff after "reports of fighting" the night before were reported for the July 18, 2017 incident. Poet's Beach was closed an hour early "due to an aggressive patron who assaulted two other patrons". No one took any action to exclude Mr. Rance or Ms. Retes from City park property, requested a criminal investigation or contacted Mr. Rance's parole officer as a result of these incidents.

24.

The City of Portland maintains an email reporting service, Report PDX, which provides complaints, updates and reports on homeless campsites, assaults and criminal activity in downtown. The reports go directly to Central Precinct Neighborhood Response Team for the Portland Police Bureau. Various citizens made complaints about the Rance campsite and

6 – FIRST AMENDED COMPLAINT

problems at Poet's Beach through the Report PDX site which copied Portland Mayer Wheeler, City Info and Report PDX.

## PORTLAND PARKS AND RECREATION RULES

### 25.

Poet's Beach is a City of Portland Park governed by Chapter 20.12 of the City of Portland Charter and Code. Poet's Beach is subject to a lease between the City of Portland and the State of Oregon. The city agrees to enforce all laws within the park boundaries as part of the terms of the lease. The Rance campsite was not on Portland Parks property but the various assaults described herein occurred on park property.

### 26.

PCC 20.12 establishes what is prohibited conduct inside Portland's parks because the City desires to "preserve the Parks for the enjoyment, safety, comfort and convenience of the public and to enhance the orderly administration of the Parks, by prohibiting conduct that unreasonably interferes with the administration and lawful use of the Parks." The City Council further finds it necessary to prevent nuisances and to protect the health, welfare and safety of the public using the City's Parks. Any violation of the provisions of the Code is punishable by the Code section 1.01.140.

### 27.

PCC 20.12 prohibits several types of conduct and activity inside Portland's city parks including, several types of unlawful acts, possession of weapons, vandalism, allowing animals into the parks, camping, trespassing.

a.  PCC 20.12.040 prohibits the possession or distribution of controlled substance;

b.  PCC 20.12.050 prohibits the possession of weapons inside a park including anything designed for an presently capable of causing, or carried with the intent to threaten or cause bodily harm to another, including, without limitation, firearms, stun guns/tasers,

7 – FIRST AMENDED COMPLAINT

switchblades, daggers, sling shot, metal knuckles, nunchaku, swords, razors, tear gas,

hatches or axes;

c.  PCC 20.12.100 prohibits vandalism inside the park including damaging or disturbing

plants or trees;

d.  PCC 20.12 restricts the admission and control of certain animals in parks;

e.  PCC 20.12.200 prohibits trespassing into areas closed to the public including remaining

in the park after closure; and

f.  In addition to all available remedies under law the Park Officers may exclude any persons

from parks for violations.

28.

Camping is prohibited in City parks. However, the City reports they only employ 11-13 rangers to enforce the rules in 200-plus parks. The City specifically notes that "not all camping complaints will result in action by the City. There are low-level behaviors that will continue, as the City must marshal its resources strategically". The city faces a homelessness crisis and offers citizens access to the "Homelessness Toolkit" at Portlandoregon.gov/toolkit for complaints and issues concerning homelessness.

29.

Citizens are advised by the City of Portland to call 9-1-1 "when a prompt response is needed in the following emergencies: Saving a life, reporting a fire, stopping a crime". All other complaints are referred to non-emergency numbers and park security.

30.

The Poet's Beach park was originally described as subject to patrolling by City Park Rangers. On May 23, 2017, the Mayor Wheeler decided that the City would fund lifeguards but designated rangers "were not needed" at Poet's Beach. The Mayor decided that drop-in rangers and calls to police would be sufficient to maintain security and order at Poets' Beach.

8 – FIRST AMENDED COMPLAINT

Apparently, this was not communicated to the Parks Security manager until July 18, 2017 after the assaultive incident described previously. In May 2017, Parks Security staff called the Mayor's decision "a serious compromise" in the project and noting "staff weren't advised of these changes". No changes were made to increase security, patrols or safety planning at Poet's Beach despite the July 17th, 28th and 23rd incidents. And despite the very violent and serious nature of the assaults and knowledge of the perpetrators, no arrests or exclusion orders were made.

31.

Despite the numerous complaints involving Mr. Rance in the weeks before the park opened, no park rangers were assigned to Poet's Beach, no updated security plan was developed, no additional police patrols were requested at Poet's Beach and no direction was given to remove the illegal campers. The Security Manager for Portland Parks Department informed the Portland Police of the fight on July 18, 2017, noting that his staff who called 9-1-1 were put on hold and then disconnected. The campers were not camping on park property but the fight occurred on park property. The Parks Security manager requested assistance from the Portland Police in handling these campers and violent crime at Poets Beach, noting he did not "know what else we can do to keep this place in order".

**DAMAGES**

32.

Mrs. Corrado was transported by ambulance to Legacy Emmanuel Hospital where she was treated for a severe laceration to her skull, approximately two inches long, requiring four staples to close the wound. She also received multiple beatings to the neck and upper and lower back resulting in deep tissue bruises. In addition, Mrs. Corrado received cuts and abrasions to her hands and knees from being thrown to the ground. Mrs. Corrado recovered from her physical injuries within a week of the attack but emotionally wasn't able to return to work until August 7, 2017.

9 – FIRST AMENDED COMPLAINT

33.

Mr. Corrado received a deep bruise to the left shoulder with pain and reduction of motion in the left arm. Mr. Corrado also recovered within a week from his injuries but returned to work on August 7, 2017. Both Mr. and Mrs. Corrado spent approximately five hours at the hospital then were released to recover at home.

34.

Mr. and Mrs. Corrado were very outgoing people before the assault. They loved going to downtown Portland to walk the waterfront. They would spend their days off shopping or socializing without a care in the world. Being out in public brought great joy to the Corrados. What this encounter has taken from them is the ability to truly relax and enjoy life now. They still go out and about but with a new trepidation and anxiety that someone will try to hurt them. They are constantly looking over their shoulder and in a lot of cases just choose to stay at home or enjoy their days off at their coastal beach house.

35.

The emotional toll this assault has taken on these individuals is incalculable. Neither of the Corrados are confrontational or aggressive towards others and were completely taken by surprise when the assault began. Mr. Corrado is still haunted by the fact that he was rendered useless to defend his wife. The guilt he carries for only being able to stand there and watch his wife be beaten is overwhelming. He never felt he would be part of such a horrific event. He questions himself constantly on what he could have or should have done differently. Mr. Corrado has never been involved in a physical altercation before so it is difficult for him to comprehend how to respond to being struck with a baton and have large rocks thrown at him. Even now, it is hard for him to comprehend the actions of the assailant. Time slowed down and the attack is still vivid. He can still feel the tip of the baton striking him on the shoulder.

36.

10 – FIRST AMENDED COMPLAINT

Mrs. Corrado took the brunt of the attack while trying to defend her husband. She was trying to divert the attention of the assailant from her husband and the result was her being thrown to the ground like a rag doll and then beat senseless. Mrs. Corrado did everything in her power to try and get help but the coward just kept hurting her. It was her screaming that finally got the attention of the Poet's Beach lifeguard and a Portland Parks Ranger. Mrs. Corrado has been severely damaged emotionally. Her trust in people changed dramatically after the assault. Her comfort level in even the smallest crowds is at times unbearable. Mrs. Corrado now jumps at the slightest of noises and gets startled by everyday events that happen around her. Her zest for life is forever compromised at the hands of this animal.

37.

Mr. Rance fled the scene but was eventually apprehended and charged with 7 counts for his crimes against the Corrados. He was convicted and sent to prison.

38.

As a result of the failure to act and the conduct of the defendants herein, Plaintiff Kelly Corrado suffered a severe laceration to her head, bruising, a minor concussion, loss of work, significant emotional damages and chronic post-traumatic stress disorder. She has endured pain, lack of mobility, headaches, vision disturbance, inability to sleep, fear, loss of her sense of security and safety, nightmares, flashbacks to the beating and a sense of anger. Plaintiff Kelly Corrado's damages are a direct result of the failures of the defendants to protect her, to provide for safe and healthy public parks, to create and promote a known danger and a failure to adhere to their own rules governing the use of public parks. Kelly Corrado's damages include $3,500 in out of pocket medical care, $3,000 in loss of wages and time off work, and $500,000 in pain, suffering and emotional damages.

39.

As a result of the omissions and actions by defendants herein, Plaintiff Andrew Corrado suffered injuries from the assault by Rance, emotional damages from watching his wife be

11 – FIRST AMENDED COMPLAINT

assaulted, and the emotional loss suffered from the sense of a loss of safety and security. He

suffered $1,500 in medical losses, $3,000 in loss of wages and time off work, and $500,000 in

nightmares, flashbacks and constant depressive symptoms arising from the memories of the

assault.

**FIRST CLAIM FOR RELIEF**: 14th Amendment Violations
Substantive Due Process: Loss of Liberty
Individual John Doe Defendants

40.

Plaintiffs reallege all matters as if more fully plead herein.

41.

Plaintiffs have the protected right to life and liberty against unconstitutional interference

or intrusion by government action pursuant to 14th Amendment to the United States Constitution.

The government actions can include those decisions resulting in a failure to act.

42.

The rights protected under the 14th Amendment due process clause bar certain

government actions regardless of the fairness of the procedures used to implement them. In this

situation, the 14th Amendment is intended to prevent government officials from acting in ways,

or failing to act, that employ their powers as an instrument of oppression or menace or which

shocks the conscience, and which are deliberately indifferent to the safety, security and liberty of

citizens.

43.

The substantive due process rights of the 14th Amendment substantive due process clause

protect citizens against the arbitrary governmental actions which shock the conscience and which

actions are deliberately indifferent to the rights held by citizens to be free from unconstitutional

infringement on life, liberty and property. The right to be free from unconstitutional infringement

of liberty includes the right to control bodily integrity. When governmental employees act in a way which is deliberately indifferent to the rights held by citizens, they are interfering in fundamental rights implicit in the Constitution. Defendant John Does were called to enforce the rules and stop criminal behavior on behalf of the citizens who used Poet's Beach.

44.

John Doe Police Officers 1 and 2, operating under color of law, while working for the City, while in uniform and subject to the laws of the State of Oregon and the United States Constitution, pursuant to training from the City, and in furtherance of the City's official policies and practices, were called to the Poet's Beach to respond to calls of a disturbance and dangerous persons assaulting other citizens. The defendants were aware of the conduct of Rance and that it was dangerous to others at the Park. Defendants even warned the Plaintiffs about Rance and his behaviors and advised them to move away from the beach location rather than detain Rance and remove him from the park. It was the Defendants' extensive opportunity to take appropriate actions combined with their repeated failure to do so which is the conscience shocking, deliberately indifferent conduct which caused a significant risk of harm and did, in fact, cause serious bodily harm to Plaintiffs.

45.

The deliberately indifferent actions committed by Defendants which violated Plaintiffs' right to freely use the public parks and to be free from unconstitutional infringement on their liberty and bodily integrity include, without limitation:

a. Failure of the individual defendants to enforce the criminal laws against individuals committing crimes especially those on public property who were assaulting or threatening other citizens;

13 – FIRST AMENDED COMPLAINT

b.  Failure of the individual defendants to enforce then-existing City of Portland Park rules on appropriate behavior in the park including, without limitation, limiting camping, restraints on appropriate use of the park, restraints on appropriate behavior and criminal activity; and

c.  Failure of the individual defendants to enforce both the park rules and Oregon law to protect all users of the public parks in the face of a known and present danger which then subjected other users of the park to dangerous conditions including specifically assaults by the known culprit.

46.

As a result of the failure by the individual Defendants to enforce the laws of Oregon and the City of Portland park rules, and in the face of a known and dangerous person in the park, Defendants' omissions subjected Plaintiffs to a danger from the dangerous person. These failures by Defendants subjected the Plaintiffs to assaults, beatings and lasting emotional damages.

**SECOND CLAIM FOR RELIEF**: 14th Amendment Monell Claim
City of Portland

47.

Plaintiff reallege all previous allegations as if more fully set forth.

48.

Mayor Wheeler is an official policy maker for the City of Portland. His decisions, orders and directives have the legal effect of policy.

49.

The City of Portland has a policies, customs or procedures by virtue of the decisions, orders and directives of the Mayor.

A. To not arrest homeless individuals engaged in criminal activity;

14 – FIRST AMENDED COMPLAINT

B. To not remove illegal campers; and

C. To not adequately provide security and protection at Poet's Beach, or to arrest, detain or remove individuals who commit crimes at Poet's Beach.

50.

As a result of the unofficial policies, customs or procedures described above, Police failed to arrest, detain or remove Rance when there were reported violent crimes committed by him, and failed to remove him from park property even on the day the Corrados visited. Police failed to adequately respond to numerous complaints about Rance and Retes including violent physical assaults. The city policies, customs or practices were a moving force in the Constitutional violations and were the direct cause of the harm visited upon them by Rance.

**SUPPLEMENTAL STATE CLAIMS**

**THIRD CLAIM FOR RELIEF**
Negligence and Vicarious Liability
(Against John Does and City of Portland)

51.

Plaintiff realleges all previous paragraphs as if more fully set forth.

52.

The City was timely and served with a Notice of Tort Claim pursuant to ORS 30.275.

53.

Defendant John Doe Officers 1 and 2 failed to exercise reasonable care, were negligent, and caused the collision in one or more of the following ways:

(a)    Failing to enforce the laws of Oregon in failing to arrest, remove and/or detain Rance and his wife when they assaulted, threatened or intimidated other park users.

15 – FIRST AMENDED COMPLAINT

(b)     Failing to enforce the park rules of the City of Portland by failing to remove Rance for camping, possessing a dangerous weapon, misuse of park property, remaining after park closures and allowing Rance to set up an elaborate "residence" which utilized park property.

(c)     The city was negligent in failing to adequately provide protection, safety and a safety plan for Poet's Beach by failing to assign a Park Ranger, failing to inform the Parks Department of the decision to remove Park Rangers, failing to include a safety plan created between the Portland Police Bureau and the Parks Department, failing to provide any safety or protection plan for citizen even after numerous assaultive incidents in July 2017 before the assault on the Corrados by the same individual involved in the prior incidents.

(d)     The city was negligent in failing to adhere to the warnings and advise of its own security experts for the Parks Department, failing to adequate investigate and follow up on incidents and make adequate changes to the management of Poet's Beach.

54.

As the result of their negligence, Defendants are responsible and liable to Plaintiffs for their injuries and damages.

55.

At all times relevant, Defendants were acting in the course and scope of their employment and duties for Defendant the City of Portland. As such, the City is vicariously liable for the acts of its employee under the doctrine of *respondeat superior*. The City of Portland, as Defendants' employer at the time of the subject collision, is vicariously liable for Plaintiff's injuries and damages.

16 – FIRST AMENDED COMPLAINT

56.

Because of the conduct of Defendants and the City, Plaintiff was assaulted and beaten by

Rance all to their physical and emotional damage. It was reasonably foreseeable that Rance

would continue to assault patrons of the park and it was apparent to the Portland Police officers

who warned the Corrados, they would be assaulted by Rance and his partner. At the time of the

incident the City of Portland owed a duty of care to the Corrados to protect them from known

and identified dangers, namely Rance.

WHEREFORE Plaintiffs prays for judgment as follows:

1. Judgment finding the Defendants violated their protected Constitutional rights to be

safe in their persons;

2. Judgment for all their economic and noneconomic damages of $506,500 for Mrs.

Corrado and $504,500 for Mr. Corrado;

3. Such other relief as is just and equitable; and

4. For Plaintiffs' attorney fees.

Dated this 12th day of November 2020.

Respectfully submitted,


/s/Michelle R. Burrows
Michelle R. Burrows OSB 861606
Attorney for Plaintiffs